## APPEAL OF MARY G. DANFORTH ET AL.
## [ESTATE OF HENDERSON GAYLORD.]

### FROM THE DECREE OF THE ORPHANS' COURT OF LUZERNE COUNTY.

Argued April 13, 1888—Decided October 1, 1888.

· A testator bequeathed legacies to be paid annually "out of the rents accruing under and from" a lease of coal lands, to the W.-B. C. & I. Co., "so long as the said lease runs and produces rents sufficient at least to pay the legacies herein charged thereon;" providing further: "The bequests made . . . . . I will and direct shall be paid out only from the rents of the W.-B. C. & I. Co., . . . . . and no other part of my estate is charged therewith."

After the testator's death, and on the application of the residuary devisees, the lease was decreed to be forfeited and at an end because of non-payment of rents, when a new lease was executed to new grantees, under which the residuary devisees received rents sufficient for the annual payment of the bequest: The legatees proceeding to enforce payment, held :

1. That the bequests were not extinguished by the forfeiture of the lease but were charged upon and continued payable out of the rents or product of the specific property then under lease, when rents were received sufficient to pay them: Shupp v. Gaylord, 103 Pa. 319.

Statement of Facts.

2. That the Orphans' Court had jurisdiction to decree the liability of the residuary devisees for the payment of said bequests, and that in default of payment, the land should be sold by levari facias subject to future instalments becoming payable, and to the rights of the lessees under the second lease made.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 404 January Term 1888, Sup. Ct.

On July 30, 1887, upon the joint petition of The Christian Church of Plymouth and The Trustees of the Christian Church of Plymouth, a citation was awarded upon Mary G. Danforth, executrix, and certain others, residuary devisees under the will of Henderson Gaylord, deceased, to enforce payment of the legacies bequeathed in certain portions of the will of Henderson Gaylord, which were as follows:

1. I give and bequeath unto my beloved wife, Betsey, the sum of two thousand dollars, to be used by her for the purpose of erecting a dwelling-house, if she so desires; but I leave the use of the said sum discretionary with my said wife. And also the sum of five hundred dollars a year, in addition to the sum of three hundred dollars per annum, which she is to receive under our marriage settlement or agreement, recorded in the recorder's office, in and for said county of Luzerne; the said two thousand dollars to be paid to my said wife one year after my decease, and the said five hundred dollars to be paid to her yearly, in each and every year during her natural life; the first thereof to be paid one year after my decease, and the said yearly payment of five hundred dollars is to be paid out of rents accruing under and from the lease of coal to The Wilkes-Barre Coal and Iron Company, if the said rents fail not to be paid; the same to depend upon the payment of rents under said lease sufficient at least to pay the legacies herein charged thereon, and not to be paid out of or charged on any other part of my estate; but if my said wife does not survive me, then and in such case the foregoing legacies to her are to be void and of no effect.

2. I give and bequeath unto The Christian Church of Plymouth two hundred dollars a year out of the rents accruing under and from the said lease with The Wilkes-Barre Coal and Iron Company, so long as the said lease runs and produces rents sufficient at least to pay the legacies herein charged thereon, to be paid yearly in each and every year while said lease produces rents as aforesaid; the first to be paid in one year after my decease; the said sum to be used for the purpose of aiding in the support of a minister to serve said church as such, but in case the said church shall neglect or decline to have regular preaching for the space of six months, then the said legacy shall accumulate and be expended for the purpose

Statement of Facts.

above mentioned, viz. : for preaching in the said church; but should the said church or society neglect or refuse to employ a minister for the term or time of three consecutive years, then and in such case I will and direct that the said two hundred dollars yearly be paid over to the trustees of the said The Christian Church of Plymouth, to be by them paid over to and distributed among the indigent widows residing in the said borough of Plymouth; to be paid to such widows as the said trustees shall deem most needy and worthy, reference being had to the Christian and moral character and good behavior of said indigent widows.

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

13. I give and bequeath to the trustees of The Christian Church of Plymouth and their successors, the sum of six hundred dollars a year out of the rents of the aforesaid coal lease with The Wilkes-Barre Coal and Iron Co., to be paid yearly in each and every year while said lease produces sufficient rents to pay the legacies charged thereon, and to be paid out of the said rents, by the provisions of my will, to the said trustees, and their successors, in trust for the benefit of the indigent widows residing in said borough of Plymouth, to be distributed among and paid over to such widows in such sums, and at such times, as the said trustees and their successors, shall decide to be most needy and worthy, reference being had to the moral character and good behavior of said widows.

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

The bequests in the foregoing will, viz. : Five hundred dollars to my wife, two hundred dollars to The Christian Church, and six hundred dollars to the trustees of The Christian Church for the benefit of indigent widows, I will and direct shall be paid out only from the rents of The Wilkes-Barre Coal and Iron Company, and to be paid, one half on the twentieth days of January and July in each and every year, and no other part of my estate is charged therewith.

The petition averred that the executors of the will had paid the legacies for the year 1877, but since then had refused to pay the same alleging that the Lehigh and Wilkes-Barre Coal Co., into which The Wilkes-Barre Coal & Iron Co. had been merged, became insolvent and went into the hands of a receiver on February 14, 1877, and such proceedings were had in the Circuit Court of the United States for the Western District of Pennsylvania, that the lease to The Wilkes-Barre Coal & Iron Co., referred to in said will, was adjudged forfeited and at an end on December 22, 1877; that the proceedings for the forfeiture of said lease were without notice to the petitioners, and without their consent; that subsequent to the said decree of forfeiture, to wit, on May 8, 1878, the said executors, with the knowledge and assent of the residuary devisees, had made and

executed a lease of the same coal privileges to Thomas Beaver
and Daniel Edwards, trading as The Gaylord Coal Company,
and that under this last lease rentals had been received by said
executors of Henderson Gaylord, deceased, and, through them,
by the residuary devisees, sufficient for the payment of said
legacies, praying, etc.

Responsive answers having been filed by the residuary de-
visees, and also by The Gaylord Coal Company, brought in as
a party to the proceeding, testimony was reported by *Mr. John
B. Reynolds*, examiner, when, after argument, on February 17,
1888, the following opinion was filed by the court:

The question to be answered may be stated as follows : Did
the forfeiture of the coal lease of The Wilkes-Barre Coal and
Iron Company work an extinguishment of the annuity be-
queathed to these petitioners?

We conclude that these legacies were not extinguished, and
think the reasoning set forth in case of Shupp v. Gaylord, 103
Pa. 319–330, is applicable here.   We fail to see any distinction
in the character of the gift to these petitioners and that to the
widow.   There is a very slight difference in phraseology but
no more than seems necessary to provide for the life of the
wife which is limited, while the existence of The Christian
Church of Plymouth and of destitute widows, as societies, is
practically limitless.   The wife might not, most probably
would not, live to the end of the lease while the societies
named as petitioners would certainly exist "so long as the
said lease runs and produces rent."   The other cause for the
repetition of the provision limiting the bequests to the income
from the said lease does not seem to be an intent to shut the
legatees up to the particular lease but rather to define the
leased estate as the only source of income from which these
annuities are to be paid; and in this respect it seems to us
there is expressed but one common intent.   The widows'
income is to be treated the same as the bequests to the church
and its trustees.

The conversion of the leased estate into another lease suffi-
cient to pay the annuities, ought not to change the character
of the legacies nor the lien thereof, without clear expression
of an intent that such should be the case.   This is not a ques-

tion of ademption, but rather one of the effect of the forfeiture of the modus of payment of the annuities, which forfeiture was wrought by the Circuit Court without notice to these petitioners. The testator seems not to have contemplated any forfeiture of the lease. His language concerning the duration and conditions of the annuities, is evidently based upon the idea that the company might work the coal to partial or total exhaustion before the expiration of the term of forty years. While the lease continues, or during the term specified for its continuance, these annuities shall be paid provided there be no exhaustion of the coal or sufficient rent be received to pay them, seems to have been the only idea in the testator's mind.

This question has been so fully discussed that we shall only darken counsel by any more words : See Welch's App., 28 Pa. 363–365 ; 2 Williams on Exrs., 1170–1320 ; Roper on Legacies, 225, 348, 354. Let a decree be drawn in accordance with petition.

On March 5, 1888, a final decree was signed adjudging that there was due and payable to The Christian Church of Plymouth the sum of $2,740.50, and to the trustees of The Christian Church of Plymouth, in trust for the benefit of the indigent widows of Plymouth, the sum of $8,221.50, which sum stood charged upon the undivided one fourth interest or share late of Henderson Gaylord, deceased, in and to the coal estate described in the lease between Henderson Gaylord et al. and the Wilkes-Barre C. & I. Co., dated, etc.; and it was further ordered that Mary G. Danforth, Mary G. Danforth, executrix of Emily G. Wilson, Lydia Gaylord, and others, residuary devisees of Henderson Gaylord, deceased, pay the said sums with interest, and in default thereof that the said undivided one fourth interest should be sold on a writ of levari facias under the direction of the court, subject to the payment of future instalments becoming due and to the rights of The Gaylord Coal Company, to enforce payment of the same. Thereupon, the respondents took this appeal, assigning as error :

1, 2. The findings that the several sums referred to were due and payable by the respondents.

3. The decree that payment of the legacies was secured by a charge upon the leased coal lands.

· 4. The decree that in default of payment the lands should be sold, as in said decree was provided.

5. The entertaining of jurisdiction in the premises.

*Mr. J. Vaughan Darling* (with him *Mr. E. P. Darling*), for the appellants :

If language means anything, the legacies in controversy are payable out of the rents of a specified lease. As early as Long v. Short, 2 P. Wms. 402, a devise of so much money payable out of a certain lease was held to be a specific legacy, and to have been adeemed by the destruction of the lease. That great authority has been recognized by Lord Cottenham in Creed v. Creed, 11 Cl. & F. 508, and has never been doubted in the whole history of our jurisprudence. It is impossible to construe this legacy to be demonstrative. The essence of such a legacy is that it shall be so given as that the fund appointed for its payment shall be designated simply for the convenience of payment, the legacy being in other respects, in effect, general and payable out of the whole estate. But when the gift is of a fund itself, or so charged upon the object made subject to it, as to show an intent to burden that object alone with its payment, it is esteemed to be specific, and consequently to be adeemed by the alienation or destruction of the object: Walls v. Stewart, 16 Pa. 275; Smith's App., 103 Pa. 559. In the case at bar, the legacies are " out of the rents accruing under and from the said lease "—" so long as the said lease runs and produces rents sufficient at least to pay the legacies herein charged thereon;" " out of the rents of the aforesaid coal lease," etc. And at the end of the will, the testator expressly discharges every other part of his estate from the payment of them.

2. The court below, however, thought the case ruled by Shupp v. Gaylord, 103 Pa. 319. But it is submitted that the differences between that case and this are radical and vital in their character. Shupp v. Gaylord was decided upon the reasons given by the court below, and the more carefully those reasons are examined, the more clearly will it appear that the character of the legatee in that case and the presumption that some provision must be intended for her life, at least, coupled with the express provision that the annuity should be for her

life, were the dominating reasons for the conclusions reached. "But if," says 2 Williams on Executors 1170, "it be apparent that the testator's meaning is to give an annuity at all events, the legacy will become a general one, though it be directed to be paid out of an estate or the rents of it."

3. Again: The residuary devisees having sold the lands claimed to be the subject of the charge of these legacies, before demand made upon them for their payment, were not personally liable in this proceeding. The mining lease of May 8, 1878, being a sale of the coal, there is no reversionary estate in the residuary devisees. Their only right is to receive the purchase money reserved by that conveyance, and the court should have decreed payment of them by the alienees: Mohler's App., 8 Pa. 26 ; Hamilton v. Overseers, 12 Pa. 147. A mere duty on the part of the residuary devisee to pay a specific legacy, does not give the Orphans' Court jurisdiction : Ditsche's Est., 13 Phila. 288. Eyre's App., 106 Pa. 184, is not inconsistent; there, the devisees were still the owners of the lands sought to be sold by the decree, and the question whether a legatee was entitled to a decree fixing a personal liability upon the devisee was expressly reserved. Moreover, § 59, act of February 24, 1834, P. L. 84, expressly confines the jurisdiction of the court to the making of a "decree or order touching the payment of the legacy out of such real estate."

*Mr. R. D. Evans* and *Mr. E. S. Osborne* (with them *Mr. Geo. K. Powell*), for the appellees:

1. This court has said in Shupp v. Gaylord, 103 Pa. 319, that the legacy to the wife was charged upon the produce of the coal at the date of the will leased to The Wilkes-Barre C. & I. Co., not upon the mere lease. We submit that the language of the other bequests is of absolutely the same import and as nearly identical with it as that which any lawyer would use in making the same provision for the three different parties consecutively. Long v. Short, 1 P. Wms. 402, and Creed v. Creed, 11 Cl. & F. 508, were cases of ordinary leases of land, the rentals being sums payable for the mere use of the land. Coal leases are very different, and even under those for short terms, the rents or royalties are paid for the coal itself, including the right to mine and remove it. The legacies were

'specific, but they were charged upon the coal product, and were not adeemed by the forfeiture of one lease and the substitution of another. There was no extinction of the specific thing upon which the legacy was charged: Shupp v. Gaylord, 103 Pa. 319. In reply to the argument that the court below had no jurisdiction, to enter a decree against the residuary devisees because the lease was in effect a sale, it is sufficient to refer to Steele's App., 47 Pa. 437. The residuary devisees accepted the devise of the coal subject to the charge of these legacies.

OPINION, MR. JUSTICE STERRETT:

In reaching the conclusion embodied in the decree from which this appeal is taken, the learned judge of the Orphans' Court adopted the construction heretofore given in Shupp v. Gaylord, 103 Pa. 319–330, to another bequest in the same will. That was $500 a year to testator's wife during her natural life, " to be paid out of the rents accruing under and from the lease of coal to the Wilkes-Barre Coal and Iron Company, if the said rents fail not to be paid; the same to depend upon the payment of rents under said lease, sufficient at least to pay the legacies herein charged thereon, and not to be paid out of or charged on any other part of " testator's estate. Two other legacies, one of which is the subject of this contention, were charged on the same property, but in somewhat different language. Referring to these three bequests the testator, in the closing sentence of the will, further directs that they " shall be paid out only from the rents of the Wilkes-Barre Coal and Iron Company . . . and no other part of my estate is charged therewith." The lease, executed by testator and others, was for the term of forty years, and contained a clause of forfeiture on non-payment of rent, at the option of the lessors. Testator's residuary estate was devised to his children. Shortly after his decease in 1876, the lease was declared void by decree of the Circuit Court for non-payment of rent. In 1878 the executors and other owners united in a lease of same premises to other parties at a reduced rental, under which payments were made more than sufficient to satisfy the three bequests aforesaid. In Shupp v. Gaylord, supra, the court below in a clear and elaborate opinion, which was virtually adopted by this

court, held that the annuity to testator's wife was not extinguished by the forfeiture of the original lease, but that the same is payable out of the rents or income of the specific property which was the subject of the forfeited lease and is now the subject of the second lease. In other words, that the subject of the testamentary charge was not the lease itself, but the rents of the coal property described therein, that the name of the Wilkes-Barre Coal and Iron Company was used in place of the property itself, the lease then in force being regarded merely as the channel through which the rents or income so charged were received.

The bequest in this case to The Christian Church of Plymouth, appellee, is, "$200 a year out of the rents accruing under and from said lease with the Wilkes-Barre Coal and Iron Company so long as the said lease runs and produces rents sufficient at least to pay the legacies herein charged thereon; to be paid yearly in each and every year while said lease produces rents as aforesaid." The question is, whether this bequest or legacy is not also charged on the rents or product of the coal property, then leased to said company, in same manner as the annuity to testator's wife. The learned judge of the Orphans' Court held it was, and in this we discover no error. The controlling question was settled in the case above cited, and all that remained was to apply the principle. While the phraseology of the bequests is somewhat different, the testator's purpose was to charge them all alike on the same fund. This is indicated at the close of the will, where the three bequests are specifically mentioned, and by necessary implication charged on same fund, with the declaration that "no other part of my estate is charged therewith." That purpose, however, is not discoverable from a single sentence of the will but from the entire instrument. The rents or product of the coal property, in the form of statedly accruing rents or royalties was manifestly the fund out of which testator intended not only the annuity to his wife but also the other two legacies to be paid, and on which, exclusively and in relief of every other part of his estate, they are by necessary implication charged. The then existing lease and the name of the lessee are mentioned merely as descriptive of the property whence the income, with which to pay the three legacies charged thereon,

was to be derived. "The lease of coal to the Wilkes-Barre Coal and Iron Company" is therefore to be regarded not as in itself the object of the charge, but as descriptive merely of the source whence was to issue the rent or income on which the legacies were charged. As was tersely said by the learned president of the Common Pleas in the case above cited: In this view the legacies would be regarded as specific, in that the produce in rentals of the coal estate then leased to the company only was charged therewith, and all other parts of the estate were discharged, and demonstrative, in that the rents or produce of the coal being primarily and solely charged therewith, the particular lease was referred to as the channel through which they were receivable.

Neither of the specifications of error is sustained.

> Decree affirmed, and appeal dismissed at the costs of appellants.