Neller Estate.

Argued November 29, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused May 28, 1947.

George W. Keitel, Deputy Attorney General, with him Robert M. Laird and James H. Duff, Attorney General, for appellant.

Horace G. Ports, with him Fisher, Ports & May, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, April 18, 1947:

This is an appeal from the decree of the Orphans' Court of York County denying the claim of the Commonwealth for certain "transfer inheritance taxes" claimed on a portion of the estate of Harry C. Neller, who died January 18, 1945, intestate. Surviving him were two daughters of his marriage with Kathryn E. Neller, and a son by a former marriage. Kathryn E. Neller presented her claim against the estate for one fourth of the net estate, pursuant to a "separation agreement" which she entered into with the decedent on October 30, 1934. In it the husband admitted his liability for the support of his wife, and she agreed that she would not press any nonsupport charge against him and in lieu of her claim for support that she would accept $75 per week until April 1, 1935, and thereafter the sum of $50 per week for and during her natural lifetime. The husband agreed to make these payments and also that "at the time of his death there shall be paid

from his estate to the wife a sum equal to one fourth of the net amount of said estate". It was further provided that the agreement shall "not be terminated by either party obtaining a divorce but that if the wife should remarry all her rights to weekly payment as set forth in the agreement shall be void and of no effect and his estate shall also be relieved from the payment of the obligation mentioned" (i. e., the one fourth of the net amount of his estate). In the adjudication the wife was awarded, according to this agreement, one fourth of the estate, amounting to $10,950.77. On this sum of money the Commonwealth makes its tax claim.

The Commonwealth based its claim for a transfer tax on section 1 (c) of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as last amended by the Act of June 22, 1931, P. L. 690, 72 PS 2301 (c), which provides as follows: "A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases: . . . (c) When the transfer is of property made by a resident, . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."

In connection with this case consideration must also be given to section 1 of the Act of May 27, 1943, P. L. .757, 72 PS 2302, which provides, inter alia, that: "In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estates by the register of wills shall be the debts of the decedent, reasonable and customary funeral expenses. . . . Provided, That the deductions herein allowed in the case of any indebtedness of the decedent shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth."

This amended Act of 1943 makes it clear that the Legislature did not contemplate by the Transfer Inheritance Tax Act that the transfer of money used to pay a bona fide debt for an adequate and full consideration in money or money's worth should be taxable. This reduces the problem now before us to these questions: Did the separation agreement create a debt due his wife and payable upon the husband's death and was it bona fide for an adequate and full consideration in money or money's worth? We decide that it was. The husband's obligations which the "separation agreement" created relieved him of all legal obligations to give additional financial support to his wife, no matter how wealthy he might become. She by this agreement precluded herself from making him pay her more than (1) $75 per week until April 1, 1935, and (2) thereafter the sum of $50 per week during her natural lifetime, and (3) one fourth of his estate at the time of his death. These debts "were contracted bona fide and for an adequate and full consideration in money or money's worth".

Certainly the Legislature did not intend by the Transfer Inheritance Tax Act of June 20, 1919, and its amendments, that the money used by an executor or administrator to pay the debts a deceased debtor intended to have paid only after his death should be subject to a transfer tax. Many individuals late in life incur debts whose payments they do not intend to be made until after their death, for the reason that their chief assets consist of the promises in their life insurance policies or because their estate is in such form that their debts cannot be liquidated until their estate is converted into money or its equivalent. If the money received by a creditor in payment of a debt from a decedent is subject to an inheritance tax because the debtor's intention was that the payment should be made only after his death it is impossible to find any reason why *all* moneys received by creditors after the death of their debtors should not be taxed, provided both creditor and debtor intended or knew that the debt would not be paid until

after the debtor's death. There is no basis for a logical distinction in imposing "transfer taxes", between a transfer of money from a decedent's estate to pay his general debts and a transfer of money from a decedent's estate to pay a debt whose time of payment was formally fixed "at or after his death". If A gives B two notes, each for a certain sum, and makes one payable 10 years later and makes the other one payable at A's death, and A dies 10 years later, the money used by A's executor in paying the first note is admittedly *not* subject to a transfer tax, but according to the Commonwealth's argument the money used by A's executor to pay the second note *is* subject to a transfer tax. We do not believe that the legislature in passing the Act of 1919, and its amendments, intended any such absurd result. The Statutory Construction Act of May 28, 1937, P. L. 1019, Article IV, section 52, 46 PS 552, declares that in ascertaining the intention of the Legislature in the enactment of a law the courts may be guided by the following presumptions among others: "(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable . . ."

The very name "Transfer Inheritance Tax" by which the tax imposed by the Act of 1919 is generally referred to* indicates that the transfer which is taxable arises from an inheritance and not from a creditor-debtor relationship based on a contract.

President Judge HARVEY A. GROSS of the court below succinctly summed up this case when he said: "If this decedent had agreed in writing for the same considerations to pay his wife a fixed and definite sum of money, or had executed and delivered to her a promissory note for the same purpose payable at his death, it could hardly be successfully argued that he would not have created a debt against his estate, and we fail to see any

---

* In the Commonwealth's Statement of Questions Involved the first question is stated thus (after quoting from the post-nuptial agreement): "is the said one-fourth of his estate taxable for *inheritance* tax purposes as a transfer", etc. (italics supplied).

difference between the contract as written and the two methods just mentioned, nor are we able to distinguish between the effect of this contract and an antenuptial agreement insofar as the payment of transfer inheritance tax is concerned."

A question somewhat similar to the one at bar arose in *In re Vanderbilt's Estate,* 172 N. Y. Supp. 511. The facts were that a testator made a bequest to his wife, pursuant to and in full satisfaction of the covenants of an antenuptial agreement wherein he had agreed to give his wife the sum so bequeathed. It was held that the bequest was not subject to transfer tax, having been made in consideration of marriage, and not in contemplation of death. In that case Justice PAGE said:

"In the case at bar, Mrs. Vanderbilt's right to receive these securities did not grow out of the will; its source was in the antenuptial agreement, and the obligation could have been enforced against the estate had there been no will. It rested upon a valuable consideration, which was executed by marriage. The mere fact that the method of the payment and satisfaction of the obligation was directed by the will did not change the inherent character of the obligation. As the Court of Appeals said:

" 'Transfers resting upon a valuable and adequate consideration, although within the classification of the statute, are not within the intendment of it, and are not taxable . . . The taxability does not depend upon fraud or an attempt to evade the statute; nor does it depend upon the . . . form given to the transfer. The law searches out the reality, and is not halted or controlled by the form. Matter of Gould, 156 N. Y. 423 [51 N. E. 287]. The measure determining the liability or freedom from liability to the tax is the nature, the essence, the effect of the the transfer. If, in truth, it, in effect, bestows, under the statutory conditions, a bounty or benefaction, and is not a transfer for money's worth, it is taxable'. Matter of Orvis, 223 N. Y. 1, 6, 8, 19 N. E. 88, 89."

It can with equal logic be said of the case at bar that Mrs. Neller's right to receive the $10,950.77 on which

the State seeks to impose a transfer inheritance tax did not grow out of either her husband's will or his intestacy. Its source was the post-nuptial agreement and it rested upon a valuable consideration.** The mere fact that the time fixed for payment was after the decedent's death did not change the inherent character of the obligation. For example, if on October 30, 1934, when the post-nuptial agreement was executed, Neller had agreed to pay his wife $10,950.77 eleven years thereafter, i. e., on October 30, 1945, the fact that he had died previous to the date of the payment, i. e., on January 18, 1945, would not have made the $10,950.77 an inheritance whose trans-

---

** In re Seitz's Estate, 262 N. Y. 32, 186 N. E. 193, holds that an antenuptial agreement in which the affianced husband agrees to give his affianced wife $20,000 "conditioned upon her surviving him six months subsequently to his death", which sum she "agrees to accept . . . in full satisfaction of all claims for dower in the real estate which" he "then owned or might thereafter acquire" was taxable under an amendment made to New York's tax law in 1930, as an "interest" in property belonging to the decedent at the time of his death and as a transfer "intended to take effect in possession or enjoyment at or after death". The court held that "a promise to marry is not 'an adequate and full consideration in money or money's worth' for a transfer of property real or personal."

In the instant case we are basing our decision on the fact that an agreement made between a husband and wife who were separated that she "would not press any nonsupport charge against him and in lieu of her claim for support she would accept $75 per week until April 1, 1935, and thereafter the sum of $50 per week for and during her natural lifetime" in consideration that "at the time of his death there shall be paid from his estate a sum equal to one fourth of the net amount of said estate" was a full and adequate consideration in "money or money's worth" for the promise he made to her, within the meaning of the Pennsylvania Act of May 27, 1943, P. L. 757, 72 PS 2302.

There is room for a difference of opinion as to whether the mutual pledge to marry made by a man and a woman can be measured in terms of "money or money's worth" but there can be only one opinion as to the pledge made by a wife whose financially responsible husband has separated from her not to press nonsupport charges against him, being measurable in terms of "money or money's worth".

fer from his estate to Mrs. Neller was subject to the transfer inheritance tax. See also *Hill et al. v. Treasurer and Receiver General,* (the Supreme Judicial Court of Massachusetts) 116 N. E. 509.

That a judicial decision may deprive the state of some inheritance taxes does not condemn the decision. There are many legitimate ways of "tax avoidance". If a man worth a million dollars presents his wife with one-half of it on their wedding day, there will be when he dies 500,000 fewer dollars in his estate but that fact does not make his wedding day gift illegal or subject to an inheritance tax. In the *Vanderbilt* case, supra, Mr. Vanderbilt's estate was depleted to the extent of $2,000,000 because of his antenuptial agreement with the woman who became his wife but that fact did not make the transaction illegal, nor did it subject the $2,000,000 to an inheritance tax.

If a husband and wife agree on a separation and in the separation agreement it is stipulated that in consideration of his wife's not asking for a support order against him, his estate will on his death pay her a certain sum of money, that sum of money cannot be taxed as an inheritance for it is a *debt.*

It is contended that the marital rights which the wife waived in this case cannot be construed as "money's worth". Undoubtedly, there are some marital rights that cannot be expressed in terms of money but a wife's right to support certainly *can* be so expressed. A $25 a week *reduction* in the amount of support Mrs. Neller was to receive after she received $75 a week for 5 months amounted at the end of the husband's life to a reduction of $12,783.33 in the amount of financial support she would have received if there had been no reduction from $75 to $50 each week. This was a sum about $1,800 more than the one-fourth of her husband's estate she was entitled to under the separation agreement. If, for example, the separation agreement had provided that instead of paying Mrs. Neller $75 a week after April 1, 1935, the husband would pay her $50 a week and allow

the $25 a week which he had previously paid her *to accumulate* until the time of his death, the sum so accumulated would amount to $12,783.33 and clearly would be a debt and *not* an inheritance.

A husband and wife living amicably together and expecting to continue to do so do not make a separation agreement. But when this husband and wife decided to separate and the husband promised his wife in writing that he would support her by paying the sums stipulated, this promise gave rise to a debt. The amount of support due at his death was as much a debt as would have been any arrearages in the weekly sums he had agreed to pay her for her support.

In the instant case there is neither allegation nor proof that Neller and his wife entered into a separation agreement *for the purpose* of defrauding the Commonwealth of a transfer inheritance tax on any part of his estate. If in any case such a fraudulent purpose is alleged and proved by facts or by reasonable inferences from the circumstances, *such fraud* would, of course, vitiate the contract. In the instant case there is no fraud or grounds for alleging fraud. In view of Mrs. Neller's agreeing to accept after the separation continued for 5 months, $25 a week less than she had been receiving for five months by way of support, this reduction of $25 a week to continue for the remainder of Neller's life, the promise that in *lieu of additional support* she should at Neller's death receive one-fourth of his net estate was a logical and natural provision to make. There is nothing in this record which justifies any intimation that this provision was a device to avoid taxation. In view of Mrs. Neller's separation from her husband, she would have no motive to enter into any agreement whereby any part of her husband's estate should be relieved of taxation, and Mr. Neller, of course, would have no motive to contrive any device by which whatever sum his separated wife should receive from his estate should be relieved of a "transfer inheritance tax". The separation agreement this husband and wife made nearly

12 years before the husband's death was clearly not a "tax evasion" device to defraud the Commonwealth. It was a reasonable contract for a separating husband and wife to make and its promise to the wife created a debt based on a consideration which had "money's worth".

We agree with the court below on the major issue and also on its conclusion as to the legality of the "separation agreement" which gave rise to the obligation whose discharge the Commonwealth seeks to subject to a transfer inheritance tax. On the question of the validity of the "separation agreement" the court below aptly said:

"A contract of this character is binding on both parties, although a divorce was in the minds of the parties when made, unless the contract amounts to collusion in procuring the divorce. There is no such inference to be drawn from this contract nor from the facts admitted by counsel as part of the record. Ray's Est., 304 Pa. 421; Lineaweaver's Est., 284 Pa. 384; Miller v. Miller, 284 Pa. 414; Conway v. Conway, 156 Super. Ct. 189; Greene v. Greene, 150 Super. Ct. 182; Muhr's Est., 59 Super. Ct. 393; and Snyder v. Snyder, 57 Super. Ct. 575."

The decree is affirmed at appellant's cost.

Justices LINN, STERN and JONES dissent.

––––––––––

DISSENTING OPINION BY MR. JUSTICE JONES:

The majority opinion seems unmistakably to chart as sure a course to effective tax avoidance as one could possibly imagine. Under the rationale of the decision, a wife's postnuptially agreed upon share of her husband's estate, payable after his death, can be relieved from liability for Pennsylvania's transfer inheritance tax if the wife's waiver of a marital right be made the consideration for her contractually specified property interest in her husband's post-mortem estate.

As I see it, all that will be necessary for any married man, resident in Pennsylvania, to do henceforth in order to obtain the tax-free situation, as above indicated, with respect to his estate will be for him and his spouse to enter into a postnuptial contract whereby she agrees "that she will not press any nonsupport charges against [him] . . . but in lieu of a support order will accept" a specified sum monthly for the husband's life upon the further condition "that at the time of his death there shall be paid [to her] from his estate . . . a sum equal to [any agreed upon portion] of the net amount of his said estate"; and the husband, on his own part, binds himself, "his heirs, executors, administrators and assigns" for the payment of the sums set forth in the contract. Such is precisely the situation which the instant decision covers; and the majority hold that the amount so payable to the wife out of her husband's estate after his death is in discharge of a debt and, therefore, deductible in ascertaining the clear value of his net estate subject to tax. With that, I cannot agree.

Nor is the decision in any wise buttressed by the fact that, at the time of the execution of the agreement here involved, the parties thereto had separated and were then "living separate and apart" because of "divers disputes and unhappy differences [which had] arisen" between them or that, several months after the execution of the agreement, the wife obtained an absolute divorce which did not terminate the agreement because of a cognate saving clause therein. It matters not whether the parties, when thus contracting, are living separate and apart or are living together in amity and continue so to do until separated by death. The *postnuptial* relinquishment by the one of a marital right against the other is no more a *"consideration in money or money's worth"* in the one instance than in the other. A conclusion otherwise seems inadmissible from the very character of the subject-matter dealt with. Marital rights

are created and exist by law in furtherance of its regard for the social importance and dignity of the status to which they attach. Once such rights become fixed, and thenceforth while the marriage endures, they are unsusceptible, as a matter of law, of being appraised, aliened or terminated on a parity with articles of commerce on the market. Tax laws, in particular, have generally so recognized: see *Commissioner v. Wemyss,* 324 U. S. 303, 305.

Primarily, the question presented for decision in the instant case is whether Mrs. Neller's postnuptial relinquishment of her right to obtain a support order against her husband constituted an adequate and full consideration *in money or money's worth* for the husband's contemporaneously specified obligation that she receive a certain portion of his net estate upon his death. In short, did Mrs. Neller become a creditor of her husband by virtue of their postnuptial agreement? Unless that question can justifiably be answered in the affirmative, there is no basis whatsoever for deducting from the husband's estate, in ascertaining its clear value subject to tax, the amount so payable to Mrs. Neller out of the estate. Section 2 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended by the Act of May 27, 1943, P. L. 757 (72 PS 2302), provides, in presently material part, that ". . . In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estates . . . shall be the debts of the decedent, [etc.] . . .: Provided, That *the deductions herein allowed in the case of any indebtedness of the decedent shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. . . .*" (Emphasis supplied).

As already stated, the rule in general is that one's postnuptial relinquishment of a marital right against a spouse does not, as a matter of law, constitute "an ade-

quate and full consideration in money or money's worth". The majority opinion cites no authoritative decision to the contrary, and none has yet come to my attention otherwise. The cases of *In Re Vanderbilt's Estate*, 172 N. Y. Supp. 511, and *Hill et al. v. Treasurer, etc.*, 116 N. E. (Mass.) 509, cited by the majority, like the cases cited by the learned court below, are readily distinguishable and are not in point here. Each of them is concerned with property rights acquired under an *ante*nuptial agreement, made when the contracting parties had not yet entered the marital status with its attendant reciprocal legal rights and liabilities, and the contemplated marriage, itself, upon performance becomes valuable consideration sufficient to support the antecedent covenants and obligations of the parties. The instant case grows out of a *post*nuptial agreement and the opinion of the majority as well as that of the court below so tabulates it. So far as a setting for deliberate tax avoidance is concerned, the distinction seems obvious.

The Federal Estate Tax Act, like our State's Transfer Inheritance Tax Act, provides, and for years has provided, that deductions for indebtedness in determining the value of an estate subject to tax ". . . shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. . . .": see Int. Rev. Code, 26 U. S. C. A. 812 (b) (5). In fact, the particular language is exactly the same in both the State and Federal Acts. The Federal statute, however, in the subdivision and subsection above cited, also goes on to declare that "For the purposes of this subchapter, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth' ". The provision just quoted is not now

cited as directly controlling here. But, at most, it is no more than a super-cautionary iteration of the rule appropriate in the circumstances to tax law administration *even without the express statutory declaration.* That that is so is plainly evident from the action taken by the Supreme Court of the United States in *Merrill v. Fahs,* 324 U. S. 308, 312-313, which involved a tax on an *inter vivos* transfer as a gift.

Thus, the Federal Gift Tax Act, consonantly with the allowances of the Federal Estate Tax Act for debt deductions, taxes as a gift property transferred in excess of "an adequate and full consideration in money or money's worth". But, the Gift Tax Act, unlike the Estate Tax Act, does not contain the legislative declaration as to the relinquishment of a marital right not being considered "to any extent a consideration 'in money or money's worth' ". Nonetheless, in the *Merrill* case, the Supreme Court applied the exclusory rule to that gift tax case on the ground that the principle was a naturally inherent part of the legislative limitation intended by the phrase "adequate and full consideration". In that connection, Mr. Justice FRANKFURTER said at pp. 312-313, "Plainly, the explicitness [i. e., exclusion of relinquishment of marital rights from being considered "money or money's worth"] was one of cautious redundancy to prevent 'subversion of the legislative intent'. Without this specific provision, Congress undoubtedly intended the requirement of 'adequate and full consideration' to exclude relinquishment of dower and other marital rights with respect to the estate tax." There is no sound reason, so far as I can see, for concluding that the Pennsylvania legislature meant anything different by its use of the same terms.

The only case of this court construing and applying the "adequate and full consideration in money or money's worth" clause as contained in the proviso of the Transfer Inheritance Tax Act of 1919, as amended,

is *Hermann Estate,* 349 Pa. 230, 36 A. 2d 804. While the facts of that case and the present are by no means "on all fours", the unsubstantiability of the consideration in relation to "money or money's worth" is equally apparent in both instances so that what Mr. Justice HORACE STERN said in the *Hermann* case (pp. 234-235) in pertinent regard merits repetition here, ". . . Moreover, by the Act of June 24, 1939, P. L. 721, amending the Act of June 20, 1919, P. L. 521, it is provided that 'the deductions herein allowed in the case of any indebtedness of the decedent shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth'. The consent of the trustees to serve in the management of the museum was not a consideration 'in money or money's worth' contemplated by the statute as necessary to convert what would otherwise be a gift or legacy into a deductible debt. See Taft, Executor, v. Commissioner of Internal Revenue, 304 U. S. 351; In re Wheeler's Estate, 119 Nebr. 344, 228 N. W. 861; Butler's Estate, 19 D. & C. 172. *If the consideration for which this gift was made were to be held sufficient to make the transaction contractual rather than donative the door would obviously be opened for an easy method of evading inheritance taxes".* (Emphasis supplied).

With the statutorily required consideration for the creation of a deductible debt nonexistent in the present case, the transfer at once became one intended to take effect in possession and enjoyment at or after the settlor's death and, therefore, taxable under the express terms of the Transfer Inheritance Tax Act: Section 1 (c) of the Act of June 20, 1919, P. L. 521, as amended by the Act of June 22, 1931, P. L. 690, 72 PS 2301 (c). See also *DuBois' Appeal,* 121 Pa. 368, 385, 15 A. 635. As was said by Mr. Justice PATTERSON, speaking for this Court in *Jones Estate,* 350 Pa. 120, 124, 38 A. 2d 30,

". . . To defeat the Commonwealth's right to the [transfer inheritance] tax, the grantor or settlor must part with possession, title and enjoyment: [citing cases]". Here, the settlor parted with no portion of his estate in his lifetime. Indeed, he could have exhausted the whole of it and left nothing at death for his wife to participate in under the postnuptial agreement.

For the reasons given, I think the Commonwealth's claim for tax was well taken and should have been allowed. I therefore dissent from the action of the Court.

Mr. Justice LINN and Mr. Justice HORACE STERN join in this dissent.