## Genthner Estate

*Vincent J. LaBrasca*, for accountant.

*Lloyd Goman*, for life tenant and beneficiary.

*Arnold M. Snyder*, for Commonwealth.

VAN RODEN, P. J., August 1, 1958.—The Commonwealth of Pennsylvania has filed written exceptions to that portion of the adjudication nisi dated December 12, 1957, sur the first and final account of the executor of decedent's estate, wherein the auditing judge held that decedent was indebted to his former wife, Helen M. Genthner, in the sum of $188,025, by virtue of a written separation agreement dated October 1, 1956. The auditing judge further held that said amount must be allowed as a deduction in the computation of the net value of the estate for inheritance tax purposes.

Counsel have submitted written briefs and oral argument relating to the said exceptions, and the matter has been fully and carefully reviewed by the court.

The uncontroverted facts are as follows:

On October 1, 1956, decedent, William M. Genthner, and Helen M. Genthner, his wife, then living separate and apart, entered into a written separation agreement, wherein and whereby the husband agreed to pay to the wife as "alimony' for her support and maintenance" the sum of $625 per month for and during her lifetime, with the provision that such alimony payments would cease in the event of the wife's remarriage, and with the further provision that "if the

Husband shall predecease the Wife, then in that event the Husband's estate shall be liable for and pay to the Wife, so long as she shall live, provided that she shall not remarry, the said sum of $625.00 per month payable on the 1st day of each and every month thereafter."

In consideration therefor, the wife relinquished all further claims for alimony or support other than as provided in said agreement.

The parties were thereafter divorced on October 9, 1956. Decedent died April 4, 1957. By his will, decedent directed his executor to make all alimony payments in accordance with the said separation agreement, and further directed that no payments shall be made unto the beneficiaries designated in his will prior to the death or remarriage of said former wife, thereby recognizing the possibility that the entire estate might be exhausted by such payments to her.

The divorced wife, who has not remarried, filed her claim against decedent's estate for the payment of the monthly sums due her under the written separation agreement. The executor of decedent's estate admitted this claim to be due in the aggregate amount of $188,025, based upon the widow's life expectancy, and the auditing judge allowed said claim in said amount.

The question raised by the Commonwealth is whether the auditing judge properly directed that said amount must be allowed as a deduction in the computation of the net clear value of decedent's estate for inheritance tax purposes at this time.

It may be noted that said amount is in excess of the gross amount of decedent's estate as disclosed by the inventory and appraisement. The effect of the auditing judge's ruling was to find that there is no inheritance tax due or owing unto the Commonwealth at this time. However, the auditing judge made the adjudication

without prejudice to the right of the Commonwealth to tax any distribution to the other beneficiaries designated in the will following the death of decedent's divorced wife.

The Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, sec. 2, as amended, 72 PS §2302, imposes the transfer inheritance tax upon the "clear value of the property" of decedent, but further provides that in ascertaining the clear value of the estate, deductions shall be allowed from the gross value for the "debts of the decedent", and with further provision that "the deductions herein allowed in the case of any indebtedness of the decedent shall, when founded upon a promise or agreement, be limited to te extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth."

In Neller Estate, 356 Pa. 628 (1947), it was held that the share of a decedent's estate which is due to his widow under a valid separation agreement providing for her support is not subject to transfer inheritance tax under the act of assembly. It was expressly held that in such case the amount due the widow is a debt for an adequate consideration in money's worth within the meaning of the act.

In Mills Estate, 367 Pa. 504 (1951), the Supreme Court again ruled that a bona fide separation and support agreement between husband and wife providing for a payment at the husband's death constituted a debt and is consideration in money or money's worth within the meaning of the act of assembly. To quote from the opinion of Mr. Justice Stearne, at page 508:

"Since the decision in *Neller Estate*, supra, it is no longer an open question in Pennsylvania that a *bona fide* separation agreement between a husband and wife providing for a payment at the husband's death, constitutes a *debt* and is consideration in money or money's worth."

In the Mills case, supra, it was indicated that in order that the hearing judge may be satisfied that the amount required to be paid by the husband under a separation and support agreement represented a substantially adequate and full consideration in money or money's worth, inquiries should be made concerning the ages of the parties, the extent of their respective property, the prospects of financial advancement and the earning capacity of the husband, and an analysis of that which the wife relinquished and what she was to receive.

At a hearing held in open court on June 30, 1958, it was established by competent testimony that decedent and his wife owned a residence and about 18 acres of ground on the old Wilmington-Chester Road in Concord Township, Delaware County, as tenants by the entireties, that this property was sold on July 24, 1957, which was after decedent's death, at a price of $35,000, and that an undivided one-half interest in this real estate was included as an asset of decedent's estate. The said real estate was free and clear of mortgage, same having been paid off in 1950.

Decedent was a medical doctor by profession, employed as medical director of the Continental-American Life Insurance Company. In 1954, decedent's reported income included $13,000 from said employer, $900 from another insurance company, $5,612.33 in dividends on securities and $45.53 from miscellaneous sources, or an adjusted gross income of $19,507.86, on which he paid a Federal income tax of $4,364.68.

In 1955, decedent reported income of $13,812.56 from his employer, $1,200 from another insurance company, $5,549.60 in dividends on securities and $37 from miscellaneous sources, or an adjusted gross income of $20,699.16, on which he paid a Federal income tax of $6,017.18.

In 1956, decedent reported earnings of $14,578.77 from his said employer, $1,600 from another insurance company, $5,478.10 in dividends on securities and $280.84 from miscellaneous sources, or an adjusted gross income of $21,959.09, on which he paid a Federal income tax of $5,648.14.

At the time he entered into the property settlement agreement, decedent owned substantially the same securities which he held at the time of death, which said securities were valued at $126,507.04. Certain of these securities had been pledged for a demand note of $35,000, leaving a net equity in the security of approximately $91,500. In April of 1956 he had a balance of $1,822.72 in a checking account and $6,939.68 in a savings account. He had an interest of approximately $2,000 in United States Savings Bonds, an automobile worth more than $1,450 and other personal property valued at approximately $3,500.

At the time he entered into the separation agreement decedent was approximately 58 years old, having been born November 18, 1898. His wife was about 52 years old, having been born on October 29, 1904.

Following the separation agreement on October 1, 1956, decedent instituted a divorce action against his wife in Montgomery, Ala., and a final decree was entered October 9, 1956.

It is noted that in consideration of the said property settlement, claimant relinquished all other rights to support.

The court finds, therefore, that an agreement for the payment of $625 per month unto the wife for her life or until she should remarry, is fair and reasonable under the circumstances and constituted a debt against decedent's estate.

For the purpose of computing the amount of the debt owed to decedent's former wife, it is proper to resort

to the tables of life expectancy and to calculate the present worth of an annuity of $625 per month, measured by the number of years of the probable duration of her life as determined by the mortality tables. See Oberholzer's Estate, 49 D. & C. 230 (1943).

At the time of decedent's death, claimant was 52 years of age, with a life expectancy of 25.07 years. Accordingly, if she fulfills her anticipated life expectancy, she will be entitled to receive from decedent's estate the aggregate amount of $188,025. It is noted that in the instant case the principal balance for distribution as shown by the account is only $80,686.91. It is likely that this entire sum will be exhausted prior to her death. In the event that she should die or remarry prior to her complete consumption of decedent's estate, the residuary beneficiaries will then be entitled to share in the remaining unconsumed balance in the proportions stated in decedent's will. The auditing judge expressly reserved unto the Commonwealth the right to tax any distribution to the residuary beneficiaries at the time they may become entitled thereto. Therefore, the Commonwealth is not prejudiced by the disposition made by the auditing judge and such disposition should not be disturbed at this time.

Accordingly, the court enters the following

### Decree

And now, to wit, August 1, 1958, it is ordered, adjudged and decreed as follows:

1. The exceptions filed on behalf of the Commonwealth of Pennsylvania to the adjudication nisi dated December 12, 1957, are hereby dismissed.

2. The said adjudication nisi dated December 12, 1957, is hereby ratified and confirmed absolutely.

3. Costs shall be paid out of the assets of decedent's estate.