## Sharp Estate

*Samuel J. Trueblood*, for accountant.
*Elmer L. Menges,* for Walter Buffington Free.
*Norman C. Henss,* for William M. Sharp.

SATTERTHWAITE, *J., Specially Presiding,* April 26, 1979—The account has been examined and audited by the court. Decedent having been a legal resident of Florida at the time of her decease, the Pennsylvania administration of her estate is

concerned only with two parcels of real estate located herein, and the within account is confined thereto.

. . .

The questions presented for adjudication involve the construction and application of a separation or post-nuptial property settlement agreement between decedent and Walter Buffington Free, her then husband. This agreement, dated December 22, 1976, in the preparation and execution of which each spouse was represented by separate counsel, after reciting their purpose to live separate and apart and to settle financial and property rights between themselves, provided, inter alia, as follows:

"3. Husband and wife do hereby acknowledge that the Real Property owned by them is to continue as presently titled subject to the following:

"a.  . . . [carrying charges, repairs, etc. of the real property to be shared equally] . . .

"b.  Upon the death of either of the parties, it is intended and understood that title to either property (real estate) shall pass to the survivor without right to or interest of the dying party for his or her estate in the real estate.

"c.  During the joint lives of the parties [wife] reserves the right unto herself to sell the Philadelphia property, and [husband] reserves the right to sell the Ambler property. Both parties agree to join in the execution of any and all of the instruments required to complete a sale. The net proceeds from any such sale shall be equally divided between the parties at settlement.

"d.  . . . [agreement not to encumber title to the real estate] . . .

"e. The parties agree and obligate themselves that, should either party remarry during the time said real property is owned by the parties, that party shall obtain the prior written consent of the new spouse releasing any interest that such new spouse would obtain in the property, due to this marriage.

"f. [Husband] will consent to [wife] and/or her mother occupying, rent free, the Philadelphia property, and she will consent to him and/or his family occupying, rent free, the Ambler property."

At the time when this agreement was entered into, decedent (wife) had already commenced divorce proceedings in Philadelphia, and a final decree of divorce was entered therein on March 18, 1977. In the meantime, decedent (wife) had removed from the Philadelphia residence (although her mother remained there, and still does) to take up legal residence in Florida. She there married William Morris Sharp on April 4, 1977. She died on October 8, 1977, leaving a will dated December 2, 1975, whereby she would have left her entire estate to Walter B. Free, her husband at the date of the will, with alternative disposition in the event of his predecease to one of the parties' sons, Robert D. Free (accountant herein). The will has been probated in this jurisdiction and William M. Sharp, decedent's surviving husband, has duly filed his election to take against the same. [He also claimed the family exemption out of the Pennsylvania estate, but such claim was withdrawn on the record of the audit hearing.]

By reason of the divorce after the date of decedent's will, Walter Buffington Free would not take, nor does he claim, any interest presently as a testamentary beneficiary; conversely, by reason of his marriage to decedent after the date of her will

which made no provision for him, William M. Sharp would be entitled to an intestate share of her net estate, if any there be: section 2507, clauses (2) and (3), respectively, of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §2507.

Mr. Free does, however, claim the Pennsylvania real estate, or the net proceeds of the sale thereof (which constitute the sole assets herein accounted for and to be awarded by this adjudication) as a contractual claimant under the aforesaid agreement. Accountant, who would be the residuary beneficiary under decedent's will, concedes his father's claim. Mr. Sharp counters by filing objections to accountant's refusal to propose the award of one-third of the said estate or its proceeds to him, contending that the separation agreement was either totally invalid or at least unenforceable in the manner contended for because (1) it is ambiguous, vague and indefinite, (2) decedent was under duress and was mentally incompetent when she entered into it, and (3), as a matter of construction, if it is not totally invalid, the agreement would entitle Free to only one and not both properties. At the hearing and in the subsequent argument briefs, Mr. Sharp has apparently abandoned the second and third of these positions, offering not one iota of evidence or argument that decedent was under duress or was mentally incompetent, and not further mentioning the stated contention that Mr. Free in any event could not be entitled to more than one property.

Mr. Sharp in his post-hearing argument brief introduced two new purported defenses: (1) that this division of the court would not have jurisdiction, citing sections 711(16) and 712(1) of the PEF Code,

and (2) that the separation agreement was void as contrary to public policy since it had for its objective the procurement of a divorce and hence was illegal.

The jurisdictional argument is totally incomprehensible. The cited sections of the code, relating to matters involving the determination of title to real estate in which a decedent's estate is interested, both specifically confer jurisdiction, either sole or concurrent, upon the orphans' court division.

The alleged public policy abrogation of the agreement in question is likewise without merit. It is founded upon an isolated sentence, taken out of context, in a lengthy letter from Mr. Free's counsel to decedent's then counsel in contemplation of the preparation of the separation agreement. After supplying background information concerning the acquisition of the parties' entireties real estate and the husband's proposal as to the language and content of the form of agreement to be drawn (which were substantially incorporated into the final draft thereof), counsel concluded: "As you possibly know, I have already entered my appearance as counsel for Mr. Free in the Philadelphia Court. I have no intent of filing an Answer to the Complaint provided the property settlement is entered into by the respective parties." The agreement itself, as executed by the parties, made no mention of divorce, and the quoted language or anything of that nature was not included as a term or provision thereof.

Unlike Moss v. Moss, 31 D. & C. 2d 88 (1963), and similar cases relied upon by Mr. Sharp, the agreement herein was negotiated and entered into, not for the procurement of a divorce or in consideration of any agreement to that end, but rather to

settle and adjust the rights and relationships between husband and wife insofar as their property and their dealings with each other were concerned. It is unquestioned that divorce was in contemplation and, in fact, action therefor may already have been commenced and counsel may have intended to refer to it in the above-quoted portion of his letter. Indeed, it may well have been counsel's purpose to attempt to defer or delay the previously uncontested prosecution of the divorce proceedings unless and until the property and other rights of the parties had been resolved.

This is a far cry, however, from making the grant of the contemplated divorce a consideration or condition of the agreement itself. A contract as to the adjustment of property rights, alimony or other like matters is valid even though made in contemplation of divorce: Zlotziver v. Zlotziver, 355 Pa. 299, 49 A. 2d 779 (1946).

On the merits, the auditing judge believes that claimant Free must succeed: that he is entitled to the real estate or its proceeds as the contractual owner of the whole thereof by survivorship upon decedent's death. Accordingly, there would be no assets remaining, of those before the court herein, out of which the intestate share of surviving husband Sharp could be awarded.

By reason of the Act of May 17, 1949, P.L. 1394, amending the Act of May 10, 1927, P.L. 884, 68 P.S. §501 et seq., it cannot be controverted that, if there had been no separation agreement, decedent and Free would necessarily and without more have become tenants in common at the moment of divorce. The subject real estate had been acquired by them by the entireties subsequent to the effective date of the Act of 1949, and section 1 of the Act of 1927 as so

amended in 1949 specifically declares the "in-common" tenancy upon divorce. The problem here, however, is: did the parties have the legal power to agree that by contract they would have a different tenure, as between themselves, and, if they legally could do so, did the agreement in question effectively express and permit implementation of such a different result, in particular, the incident of survivorship?

The entirely new concept of an automatic and pro forma conversion of an entireties estate into a tenancy in common upon divorce, as introduced into the law for the first time by the Act of 1949, does not, in the opinion of the auditing judge, preclude the possibility that the parties might by their own agreement elect to continue some or all of the classic attributes of the prior entireties holding, if they mutually so agreed. Certainly, nothing in the statute would so require. It is true that section 3 of the Act of 1927, as amended by the Act of 1949, 68 P.S. §503, would mandate that if the statutory remedy of partition therein provided be availed of, the net proceeds of the judicial sale of former entireties property must be equally divided, and, by reason of that mandate, cases like Lykiardopoulos v. Lykiardopoulos, 453 Pa. 290, 309 A. 2d 548 (1973), would preclude counterclaims in such partition proceedings which would have the effect of modifying the half-and-half division of the proceeds. Nevertheless, no part of the statute would appear to overrule the capacity of the parties to make their own settlement of entireties property if they can do so amicably and without necessity to invoke the judicial process of partition.

Although the decision did not involve the exact question, Olivieri v. Olivieri, 242 Pa. Superior Ct.

457, 364 A. 2d 361 (1976), inherently and necessarily assumed that it was possible for the parties so to agree; otherwise, the problem which the court actually decided could not have arisen. There, in an action initiated by the divorced wife for enforcement of a property settlement agreement, the question was whether the defendant former husband might counterclaim to set aside the agreement on the ground of fraud and thereupon to have partition of the former entireties property under the Act of 1927, as amended in 1949. The court held that such a counterclaim would lie, despite Lykiardopoulos, observing p. 465: "If the agreement is declared void, the disposition of the jointly-owned property contained in the agreement is likewise void and the property is properly the subject-matter of a partition action." The corollary seems self-evident: if the agreement would be found valid against the charge of fraud, it would be enforced to the exclusion of the statutory partition remedy which would thereupon become inappropriate.

The auditing judge further concludes that the instant post-nuptial or separation agreement did intend to preserve, and in fact contractually did preserve, either party's right to enforce certain aspects of the then entireties nature of the holding subject only to those qualifications or modifications therein spelled out. The parties expressed intention is clear and certain: "3. . . . [t]he Real Property . . . is to continue as presently titled subject to the following: . . . b. Upon the death of either . . . title to either property (real estate) shall pass to the survivor without right or interest of the dying party for his or her estate in the real estate."

They thereby declared their purpose to "continue" their realty holdings "as *presently* titled,"

i.e., with the attributes of their *then* tenancy by the entireties, subject to the particular limitations or modifications delineated in the sub-clauses, but with specific reiteration therein of the feature of survivorship. This choice of language is particularly significant in view of their obvious knowledge (or that of their legal advisors who drafted the agreement) that the law would provide its own result, eliminating survivorship upon the contemplated divorce, if they did not agree to a different arrangement.

Sharp's contention of uncertainty and indefiniteness is not well founded. As demonstrated, the agreement was clear and explicit. Nor is there any merit to his further argument that the agreement is legally ineffective to bring about the survivorship feature since it contains no words of grant, or promise to make a grant, to convert the statutory estate of a tenancy in common upon divorce into a joint estate with right of survivorship. The auditing judge fails to apprehend the relevance of this position. The attribute of survivorship as an incident of the tenancy by the entireties already existed and no "grant" was necessary to create it under the agreement. While the Act of 1949 might otherwise have abrogated that attribute upon divorce, the parties obviously intended to provide, and, as the auditing judge believes, they legally could and did provide, that as a matter of contract they could continue to enforce that attribute whether before or after divorce and notwithstanding the statute.

Contractual provisions for the post-death disposition of property, if supported by appropriate consideration (here the mutual promises of the parties), are valid and binding and may be enforced against the estate of the deceased promisor in priority to the

testamentary or intestate interests of distributees: Beeruk Estate, 429 Pa. 415, 241 A. 2d 755 (1968); Pratt Estate 422 Pa. 446, 221 A. 2d 117 (1966); Mills Estate, 367 Pa. 504, 80 A. 2d 809 (1951); Neller Estate, 356 Pa. 628, 53 A. 2d 122 (1947).

One question requires further comment, although, fortunately, it has ceased to be a problem requiring adversary disposition. Under clause (f) of the 3rd item of the separation agreement above-quoted, claimant Free consented to the rent-free occupancy of the Philadelphia property not only by decedent but also the latter's mother, who is still in such occupancy. It has now been conceded by the argument brief filed on his behalf that Free agrees that if the Philadelphia real estate be awarded to him, the continuing right of decedent's mother to occupy the same for life may be made a term thereof.

For the foregoing reasons, and subject to the life interest of decedent's mother as aforesaid, the claim filed by Walter Buffington Free is hereby approved and allowed; the objections filed by William M. Sharp are hereby denied, refused and overruled. The net ascertained balances for distribution are hereby awarded to Walter Buffington Free in satisfaction of his contractual right thereto.

• • •

ORDER

And now, April 26, 1979, the within adjudication is directed to be filed and is hereby confirmed nisi.