## Estate of Mary E. Sharp

*A. Victor Meitner,* for petitioners/appellants.
*Catherine R. Barone,* for Commonwealth.
*James F. Crotty,* for petitioners/appellants.

TREDINNICK, *J.,* April 13, 1981—This is an appeal by Robert D. Free, executor of the estate of Mary E. Sharp, deceased, and Walter B. Free, decedent's former husband, from the Commonwealth's inheritance tax assessment. The assessment disallowed certain debts and deductions claimed by the executor, which petitioners claim were proper.

The facts of this case, presented in a stipulation by the parties, are as follows: Decedent and Walter B. Free were married on October 28, 1944. During their 32 year marriage the couple acquired two parcels of real estate in Pennsylvania as tenants by the entireties. In 1976, they separated and thereafter entered into a written separation agreement, dated December 22, 1976. The agreement provided, inter alia, that the two parcels of real estate would continue to be jointly owned, with a right to survivorship. They were divorced on

March 18, 1977, thus all provisions of decedent's will favoring Walter Free, her former spouse, were rendered ineffective: Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §2507(2).

Subsequent to her divorce, decedent married William M. Sharp. She died testate on October 8, 1977, a Florida resident. Her will duly probated in this jurisdiction, left her entire estate to her former husband, Walter B. Free, and in the alternative, to her son Robert D. Free. The executor filed an account in this court. Decedent's husband filed an election to take against the will, and Walter Free claimed the real estate. The matter was audited by the Honorable Edwin H. Satterthwaite who held that Walter Free was "entitled to the real estate or its proceeds as the contractual owner. . . thereof by survivorship upon decedent's death." Sharp Estate 105 Montg. 396, 400 (1980). The award was "subject to such inheritance tax, if any, as may ultimately be found due and payable." Id., at 397.

The executor then filed an application and affidavit for appraisement and waiver of transfer inheritance tax provisions for a non-resident decedent. This return included all of decedent's taxable assets as well as a statement of debts and deductions.

The total value of the assets listed on the affidavit for appraisement was $22,932.57, consisting solely of one-half the value of the two parcels of real estate $27,250, less one-half the amount of the existing mortgage debt $4,317.43. The total amount of the debts and deductions was $30,692.50 consisting of the amount of Walter Free's claim of the real estate, valued at $27,250 and standard counsel fees, advertising and other general administration expenses in the amount of $3,442.50.

On July 16, 1980, the Commonwealth issued an

assessment, assessing the estate with tax and interest totalling $3,797.69. Inheritance tax was assessed on one-half the value of two real estate parcels and all debts and deductions were disallowed. This timely appeal followed.

Under such circumstances is the payment of Walter B. Free's claim to the value of the real estate deductible? We take this to be the primary question, as the Commonwealth advances no arguments in support of its refusal to allow the administration expenses as deductions.

The Pennsylvania transfer inheritance tax is a tax on the privilege of inheritance: Denniston's Estate, 325 Pa. 453, 191 Atl. 39 (1937). All real property and tangible personal property of a nonresident decedent havings its situs in Pennsylvania is subject to Pennsylvania Inheritance tax.[1] Section 402 of that act sets forth two options for the computation of nonresident inheritance tax. It provides at 72 P.S. §2485-402:

"When the decedent was a nonresident, the tax shall be computed upon the value of real property and tangible personal property having its situs in Pennsylvania, in excess of unpaid property taxes assessed thereon and any indebtedness for which it is liened, mortgaged or pledged, at the rates in effect at the transferor's death: Provided that the person liable to make the return under section 701 may elect to have the tax computed as if the decedent were a resident and his entire estate were property having its situs in Pennsylvania, and the tax due in such event shall be that amount which bears the same ratio to the tax thus computed as the real property and tangible personal property

---

1. Act of June 15, 1961, P.L. 373, 72 P.S. §2485-102(17)(iv).

located in Pennsylvania bears to the entire estate of such decedent."

In this case, the executor elected to have the tax computed by the second alternative—the proportionate method. After applying the pro-rata tax rule, the executor concluded and now argues that the estate was actually insolvent, the debts and deductions being proper.

Section 632, 72 P.S. §2485-632, of the Inheritance Tax Act provides that an indebtedness of a decedent "when founded upon a promise or agreement . . ." is deductible in ascertaining the clear value of the estate subject to tax to the extent that it was "contracted bona fide and for an adequate and full consideration in money or money's worth."

Walter Free's claim of $27,250 is based upon the written separation agreement, dated December 22, 1976. The contract states that "[u]pon the death of either of the parties . . . that title to either property . . . should pass to the survivor without right to or interest of the dying party for his or her estate in the real estate." The Commonwealth appears to contend that no indebtedness arose out of this agreement. The basis for this position is not clear. The agreement was entered into for bona fide consideration, having been executed ". . . in consideration of the mutual promises . . ." of the parties. Furthermore, that issue has been previously decided by Judge Satterthwaite in his adjudication of the audit of the executor's account: Sharp Estate, supra. It was there decided that Mr. Free was "entitled to the real estate . . . as the contractual owner of the whole thereof by survivorship upon decedent's death." Id. at 400. In finding Mr. Free's contractual claim valid, the judge stated at p. 402:

"Contractual provisions for the post-death disposition of property, if supported by appropriate con-

sideration (here the mutual promises of the parties), are valid and binding and may be enforced against the estate of the deceased promisor in priority to the testamentary or intestate interests of distributees: Beruk Estate, 429 Pa. 415 (1968); Pratt Estate, 422 Pa. 446 (1966); Mills Estate, 367 Pa. 504 (1951); Neller Estate, 356 Pa. 628 (1947)."

It is therefore apparent that decedent's estate is in fact indebted to Mr. Free.

The Commonwealth argues, however, that even if the claim of Walter Free is based on an indebtedness arising out of a promise or agreement, nevertheless, it may not be deducted for inheritance tax valuation purposes because section 662, 72 P.S. §2485-662, of the Inheritance Tax Act nullifies section 402, 72 P.S. §2485-402, in these circumstances. Section 662 provides that: "Claims of a former or surviving spouse, or others, under an agreement between the former or surviving spouse and the decedent, insofar as they arise in consideration of a relinquishment or promised relinquishment of marital or support rights, shall not be deductible."

The agreement between decedent and her former spouse has been attached to the stipulation of facts, and is of necessity, our first point of reference. It states that it is entered into because the parties desire to settle matters between them, including ". . . any and all claims and possible claims by one against the other, or against their respective estates." In the body of the agreement itself, there is no mention of support, nor is there any mention of either party giving up rights in the other's estate. However, the very last paragraph of the document states: "This agreement when entered into shall, except as therein provided, discharge all rights and

obligations between the parties." By indirection, then, the contract does appear to extinguish mutually, the rights of either party to support from the other, or to assert any interest in the estate of the other. The agreement specifically deals only with the real estate, transfer of a vehicle from decedent to her then husband her renunciation of any interest in their joint bank accounts or his life insurance policies.

The question thus becomes, whether the claim of the former spouse to the real estate under that contract arose ". . . in consideration of a relinquishment of marital or support rights. . . ." If it did, it is indeed not deductible, notwithstanding it may be a debt of the estate.

The primary purpose of the contract between the parties appears clearly to have been a resolution of their rights in, and the future handling of, the two parcels of real estate then held by them as tenants by the entireties. In summary, what they did was agree (1) that each would retain the right to exclusive occupancy of one of the residences, although costs of maintaining both were to be shared equally; (2) that if sold (and the exclusive occupant had the sole right to sell), the net proceeds were to be divided equally and (3) that upon the death of either, title "shall pass to the survivor without right to or interest of the dying party for his or her estate in the real estate." The claim which now has resulted from that contract does not, by any fair reading of the overall agreement, "arises in consideration of a relinquishment . . . of marital or support rights." Stated another way, it is clear that Mr. Free did not obtain the right to title to the properties on his wife's death because he gave up the right to take against her will, or gave up the right to support from her. These rights were so incidental that the

parties did not even directly deal with them, but rather extinguished them in a totally oblique manner. Rather, the consideration supporting both decedent's and claimant's stated right to the properties on the decease of the other were the mutual promises in respect to the real estate as noted above. While the parties were altering certain aspects of a tenancy by the entireties during marriage, and the tenancy in common which would result on divorce we do not consider this to be a relinquishment of "marital rights." It is noted also that decedent *may* have given more—she gave claimant a car and relinquished possible property rights in joint bank accounts and his life insurance policies. But those items, if "marital rights" at all, would be consideration for her claim to the properties were the situation reversed—not his.[2]

Accordingly, section 662, 72 P.S. §2485-622, of the act is not applicable to the present claim.

Finally, as to this phase of the matter, the Commonwealth asserts that section 241, 72 P.S. §2485-241, of the Inheritance Tax Act must be considered to supercede section 402, 72 P.S. §2485-402, because it renders taxable a proportionate share of property held by a decedent with another in joint tenancy with right of survivorship. That section reads in part as follows:

"Joint Tenancy—When any property is held in the

---

2. While obvious, we point out that this agreement long pre-dated the Divorce Code of April 2, 1980 23 P.S. §101 et seq., thus concepts such as equitable distribution of marital assets were not in existence. Where such an agreement entered into today, it would clearly involve "marital rights," since under the new act, each has a right to an equitable division of real and personal property: 23 P.S. §401(d). Query—would such "marital rights" be considered as encompassed within the phrase as used in section 662, 72 P.S. §2485-622?

names of two or more persons, . . . so that, upon the death of one of them, the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right, upon the death of one of them, shall be deemed a transfer subject to tax under this act . . ."

In the present case, the properties were not "held" in the names of the parties as joint tenants with right of survivorship—that is, the deed itself did not provide that this joint tenancy had the attribute of survivorship. The claimant was thus *not* entitled to "immediate ownership or possession and enjoyment of the whole property." Rather, he was obliged to prove the contract which gave him this right. It is precisely that procedure which was involved in the matter before Judge Satterthwaite. Thus the situation here does not fit within the language of section 241, 72 P.S. §2485-241.

Accordingly, the properties were in fact an indebtedness of the estate, and deductible.

It has been noted that the Commonwealth's denial of the deductions for administration expenses has not been seriously pressed. Section 601, 72 P.S. §2485-601, of the Inheritance Tax Act states: "The only deductions from the value of the property transferred shall be those set forth in this Article." Section 611, 72 P. S. §2485-611, of the act specifically states that administration expenses are deductible. All of the debts and deductions listed in the schedule filed with the tax return for the estate are standard administration expenses, and clearly deductible.

Accordingly, we enter the following

## DECREE NISI

And now, April 13, 1981 upon consideraton of the

within petition, briefs and argument thereon, the appeal of Robert D. Free and Walter B. Free from the appraisement for inheritance tax purposes dated July 16, 1980, is sustained, the deductions are allowed, and the inheritance tax assessed against the Estate of Mary E. Sharp, deceased, is stricken, the estate being insolvent for inheritance tax purposes.

Unless exceptions are filed hereto within ten days notice hereof, this decree shall become final as of course.